UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCIS M. BROWN II,

    Plaintiff,                                              Civil Action No. 17-CV-12863

vs.                                                       HON. BERNARD A. FRIEDMAN

DTE ELECTRIC COMPANY,

    Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 17]. Plaintiff has filed a response in opposition, and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

Plaintiff has brought this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* He alleges that after working for defendant for 31 years, most recently as a "nuclear operator" at defendant's Fermi 2 power plant, defendant discharged him for failing to provide a urine sample during a random drug screening test. Compl. ¶¶ 4, 5, 7, 19. Plaintiff alleges that although other tests were available, defendant insisted on a urine test, and that he was unable to provide a urine sample on demand because he has an enlarged prostate. *Id.* ¶¶ 8, 18. He claims that his enlarged prostate and lack of bladder control constitute a disability under the ADA, and that defendant violated his rights under the statute by discharging him and by failing to accommodate this disability by offering an alternative drug test. *Id.* ¶¶ 24, 27, 32-33.

Defendant seeks summary judgment on the grounds that (1) plaintiff was not disabled at the time of his termination, (2) the accommodation plaintiff requested (i.e., a drug test other than

a urine test) was not reasonable, as providing it would have violated regulations of the Nuclear Regulatory Commission ("NRC"), (3) NRC regulations required defendant to revoke plaintiff's "unrestricted" plant access, thereby making him unqualified for his job, and (4) evidence of pretext is lacking. Def.'s Summ. J. Br. at 1. Having considered the parties' briefs and the applicable law, the Court is persuaded that plaintiff's claim fails based on the threshold issue raised in defendant's first argument, namely, that plaintiff was not, and is not, disabled within the meaning of the ADA. The Court therefore finds it unnecessary to consider defendant's remaining arguments.

To state a prima facie case under the ADA for failure to accommodate or for wrongful discharge, plaintiff must first show that he is disabled within the meaning of the act. *See Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018) (failure to accommodate claim); *Cady v. Remington Arms Co.*, 665 F. App'x 413, 419 (6th Cir. 2016) (wrongful discharge claim). Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The impairment in the present case is "[t]he inability of Plaintiff to control his own bladder," Compl. ¶ 27, or "being unable to urinate and diagnosed with an enlarged prostate," or having "an enlarged prostate." Pl.'s Resp. Br. at 23, Pl.'s Dep. at 82, 95. Plaintiff does not allege that he is incontinent or that he urinates frequently, urgently, or painfully. Rather, his alleged impairment is that his enlarged prostate causes him to urinate infrequently and that he could not produce a urine sample when defendant, pursuant to NRC regulations, required him to provide such a sample for a random

drug test.[1]

As plaintiff does not claim either to have a record of this impairment or that defendant, or anyone else, has regarded him as having such an impairment, the threshold issue is whether his infrequent urination (caused, he argues, by his enlarged prostate) "substantially limits one or more [of his] major life activities." Defendant concedes that "urinating is a major life activity." Def.'s Reply at 2.[2] Therefore, the narrow issue is whether plaintiff's impairment "substantially limits" either his ability to urinate or another major life activity.

The Sixth Circuit has held that this

> [t]o determine whether a disability substantially limits major life activities, the regulations direct courts to compare the person claiming a disability to "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict . . . a major life activity" to be substantially limiting. *Id.* Like the term "major life activities," "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

---

[1] Plaintiff testified that on April 3, 2017, at approximately 8:45 a.m., he received a call to report for random drug testing. Pl.'s Dep. at 19. Plaintiff was unable to provide a urine sample on the first try. *Id.* at 22. For the next three hours, he was given eight ounces of water to drink every thirty minutes, but he nonetheless could not provide a urine sample. *Id.*; *see also* Def.'s Ex. 8. Pursuant to NRC regulations, defendant then suspended plaintiff's plant access pending review by the "medical review officer." Pl.'s Dep. at 24-25. When the medical review officer, Dr. Fink, determined that there was no sufficient medical reason to explain plaintiff's inability to produce a urine sample, his access to all nuclear facilities was permanently revoked pursuant to NRC regulations.

[2] The ADA defines a "major life activity" as including "the operation of a major bodily function, including but not limited to, functions of the . . . bladder." 42 U.S.C. § 12102(2)(B). Other major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

3

*Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853–54 (6th Cir. 2018). Under regulations issued by the Equal Employment Opportunity Commission, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and it "is not meant to be a demanding standard. 29 C.F.R. § 1630.2(j)(1)(I). Further,

> [a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii). The regulations go on to list the following examples of substantially limiting impairments:

> Deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability (formerly termed mental retardation) substantially limits brain function; partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function; autism substantially limits brain function; cancer substantially limits normal cell growth; cerebral palsy substantially limits brain function; diabetes substantially limits endocrine function; epilepsy substantially limits neurological function; Human Immunodeficiency Virus (HIV) infection substantially limits immune function; multiple sclerosis substantially limits neurological function; muscular dystrophy substantially limits neurological function; and major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function. The types of impairments described in this section may substantially limit additional major life activities not explicitly listed above.

29 C.F.R. § 1630.2(j)(3)(iii). The Sixth Circuit has stated that "[i]n determining whether a person's limitations are substantial, we consider '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the

4

expected permanent or long term impact of or resulting from the impairment.' 29 C.F.R. § 1630.2(j)(2)(i)–(iii). Further, the plaintiff's evidence that his or her impairment is substantially limiting must derive from his or her own experience." *McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 282 (6th Cir. 2007).

Even under these broad, undemanding standards, the Court is unable to find that plaintiff's enlarged prostate and infrequent urination have substantially limited him in any way. At his deposition, plaintiff testified that he urinates "a couple of times a day." Pl.'s Dep. at 21, 25. This had been the case for "[m]aybe a year." *Id.* at 26. Asked if he had consulted with a doctor about this issue, plaintiff responded, "No, not really. . . . [I]t hadn't been a major issue." *Id.* When plaintiff was seen by the medical review officer, Dr. Fink, two days after being unable to provide a urine sample, plaintiff "didn't know I had a prostate issue." *Id.* at 31. Plaintiff's primary care physician, Dr. Kabir, who examined plaintiff on April 7, "had no direct diagnosis [but] believed it could potentially have been dehydration, or because of my diabetes, the potential was there that it could have been a neurological condition with the bladder." *Id.* at 39, 41.[3] Plaintiff first learned that he had an enlarged prostate when he saw a urologist, Dr. Shah, on May 15, 2017, six weeks after

---

[3] Dr. Kabir's office notes from April 7, 2017, indicate that "patient was unable to provide drug test at work as he was unable to void for 3 hours." Def.'s Ex. 17, PageID 400. No cause for this is indicated, and the only "Problem/Dx" noted was "Type 2 diabetes mellitus without complications Assessment:Stable." *Id.* PageID 401. In a "to whom it may concern" letter dated April 7, Dr. Kabir wrote that plaintiff "was seen in our office today related to urinary retention. It is possible he had some mild dehydration, which could cause him to not be able to void in a specified time period. No other significant problems were seen." Def.'s Ex. 18.

Plaintiff saw Dr. Kabir again on April 25, at which time Dr. Kabir noted: "Patient was unable to void at work for urine toxicology. Now his employer is giving him a hard time. Patient was slightly dehydrated probably and was unable to void. Patient also has history of diabetes mellitus and chronic back pain and may have neurogenic bladder which may have caused problems with voiding." Def.'s Ex. 17, PageID 403.

5

he failed to produce a urine sample at work. *Id.* at 58, 102. Dr. Shah prescribed medication and told plaintiff to follow up in one year. *Id.* at 61. Plaintiff testified that Dr. Shah "diagnosed the large prostate as the reason that I was not able to go." *Id.* at 65.[4] Plaintiff has not returned to Dr. Shah, and he has not returned to Dr. Kabir except for treatment of his diabetes. *Id.* at 69. Plaintiff stopped taking the prostate medication when the prescription ran out, and he is not currently receiving any treatment for his prostate. *Id.* at 62, 82.

The Court concludes that while plaintiff plainly has a medical impairment (enlarged prostate), he does not allege or present any evidence suggesting that it *substantially limits* any of his life activities, including his ability to urinate. Plaintiff testified that the extent of this limitation is that the frequency of his urination is reduced to "a couple of times a day," which although less frequent than normal does not by itself show any type of significant or substantial limiting effect. Further, although plaintiff had been experienced this reduced frequency for approximately one year by the time of his unsuccessful drug test, he had not sought medical attention because it "hadn't been a major issue." Under *McPherson*, the evidence as to whether an "impairment is substantially limiting must derive from [the plaintiff's] own experience," and in plaintiff's experience his reduced urination frequency is not limiting in any way he perceived to be substantial. As the regulations

---

[4] In a "to whom it may concern" letter dated May 15, 2017, Dr. Shah wrote that plaintiff "was seen in our office today regarding a voiding issue. He does have an enlarged prostate gland which can make it difficult to urinate. He was unable to give a urine specimen today." Pl.'s Ex. 8.

At his deposition, Dr. Shah testified that plaintiff came to see him because "I cannot urinate on command." Shah Dep. at 12. Dr. Shah found plaintiff's prostate to be enlarged (two on a four-point scale) and believed this "most probably" was the reason plaintiff could not produce a urine sample at work. *Id.* at 16, 23-24. Dr. Shah prescribed a 30-day course of Flomax and "watchful waiting." *Id.* at 12, 22, 33-34. His diagnoses based on a scoping procedure were "mild penile stricture" and "mild obstructing hyperplasia." *Id.* at 32.

state, "not every impairment will constitute a disability within the meaning of this section." Plaintiff's enlarged prostate, and consequent infrequent urination, is a minor impairment that does not meet the ADA's definition of disability.

Because plaintiff has failed to show that he has a disability within the meaning of the ADA, he has failed to state a prima facie case under the statute either for failure to accommodate or for wrongful discharge. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

Dated: August 30, 2018  
Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 30, 2018.

s/Johnetta M. Curry-Williams  
Case Manager